Revised May 29, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-60125
_____

TERESA BALDWIN,

Plaintiff /Appellant,

VERSUS

FRANKIE DANIELS, Individually
and in his Official Capacity,

Defendant / Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

May 17, 2001

Before FARRIS[*], JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:

Plaintiff, Teresa Baldwin, appeals from a take nothing judgment in her case against defendant Sheriff Frankie Daniels under Section 1983 alleging due process and First Amendment violations stemming from Daniels' refusal to accept bonds written by Baldwin without notice or hearing. Finding that Baldwin has no constitutionally protected liberty or property interest in having bonds

---

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

written by her accepted at the Pontotoc County Jail, we affirm the judgment of the district court on Baldwin's due process claims. We vacate the district court's judgment on the First Amendment claim and remand for further proceedings.

## I.

Prior to the events which gave rise to this litigation, Teresa Baldwin worked as a soliciting bond agent for Calvery Bail Bonding Service from Corinth, Mississippi, and its owner, a professional bail agent, Cleat Calvery. Baldwin was and still is licensed to write bonds by the Mississippi Department of Insurance as required by Mississippi state law. Baldwin maintained her office and conducted most of her business in Pontotoc County, although she did occasionally write bonds in other counties.

In December 1997, defendant Frankie Daniels became Sheriff of Pontotoc County. He questioned the propriety of Baldwin writing bail bonds while her husband Mark was a constable. After Daniels received an opinion from the Mississippi Attorney General that Baldwin could write bonds as long as her husband was not involved in her business, Daniels allowed Baldwin to continue writing bonds. On April 1, 1998, Daniels implemented a rotation system for bail bonding at the jail as a method to reduce fights among bondsmen and to spread the work out between the approved bondsmen. Under the new system, even if a prisoner requested a specific bondsman, the request was not honored and the next bond agent on the list was given the work. Baldwin was one of three approved agents on the rotation. Baldwin objected to the rotation policy to Sheriff Daniels.

On April 4, 1998, Baldwin was asked by a former client to write a bail bond so that one of his incarcerated employees could be released from jail. Baldwin explained the rotation system to the client and told him that she could only bond when her turn on the rotation came up regardless of the request for her. The client was not satisfied with this policy and called Sheriff Daniels to complain.

Baldwin was told that she could write the bond for Litton, but later Daniels told Baldwin that if she wrote the bond for Litton it would be the last bond she wrote at the Pontotoc County Jail. Baldwin did not write the bond.

Shortly thereafter, the sheriff again revised his bail bonding policy and a new list of approved bail bondsmen was posted. Baldwin was no longer on the approved list as of mid-April 1998. From April 1998 to December 1999, Baldwin was prohibited from writing bonds at the Pontotoc County Jail. When a new sheriff entered office in December 1999, Baldwin began writing bonds again.

Baldwin filed suit in May 1998 against Sheriff Daniels in his official and individual capacities alleging violations of her constitutional rights arising from the above described actions. Specifically, Baldwin claimed violations of her right to procedural due process and First Amendment retaliation for her complaints against Sheriff Daniels' bonding policies. The case was tried before a jury in January 2000. At the close of Baldwin's case in chief, Daniels moved for judgment as a matter of law on the due process claims on the basis that there was no showing that Daniels had violated a clearly protected right. Holding that there was no clearly recognizable constitutional right to write bail bonds, the district court granted judgment as a matter of law in favor of Sheriff Daniels on the grounds that he was entitled to qualified immunity on Baldwin's due process claim against him in his individual capacity. Without motion by the defendant, the district court also granted judgment as a matter of law on the First Amendment claim on the basis that Baldwin's speech, objecting to the implementation of the rotation bonding system, was not protected because it was not uttered to a third person before Sheriff Daniels prohibited Baldwin from writing bonds in Pontotoc County. The district court also concluded that the due process claim against Daniels in his official capacity would be decided by the jury "and the issue for this jury to decide is whether the action of the sheriff in suspending Mrs. Baldwin's bond writing privileges was arbitrary and capricious."

The jury was instructed that Baldwin's interest in her bail bonding business and in the profits of that business and her license as a soliciting agent constituted liberty and property interests under the Fourteenth Amendment which could not be taken in an arbitrary and capricious manner without due process of law. The jury was further instructed that the sheriff had great discretion to approve or not approve bonds and that the sheriff should not act in an arbitrary and capricious fashion and should be able to articulate a legitimate reason for the action. The jury found for the defendant.

This appeal followed. Baldwin argues that the district court erred in granting judgment as a matter of law in favor of Daniels on her First Amendment retaliation claim and her due process claim against Daniels in his individual capacity. Baldwin also contends that the district court erred in requiring her to prove that Daniels acted in an arbitrary and capricious manner as an element of her procedural due process claim against Daniels in his official capacity.

II.

Baldwin's first argument on appeal is that the district court erred in granting judgment as a matter of law to Daniels on the ground that her speech, objecting to the implementation of the rotation bonding system, was not protected because it was not uttered to a third person before Sheriff Daniels prohibited her from writing bail bonds in Pontotoc County. Baldwin is correct. The First Amendment does not require that the statement be published to a third party, only that the statement be the basis for the deprivation of the government benefit. Blackburn v. City of Marshall, 42 F.3d 925, 934 (5th Cir. 1995). Baldwin's First Amendment retaliation claim should have been submitted to the jury for a decision on the merits, requiring us to remand this claim for further proceedings.

Daniels' argument that the jury could have found that Baldwin's complaint was not the motivating factor behind his decision to revoke her bond writing privileges is not insubstantial. We note that the jury found that Sheriff Daniels was not arbitrary and capricious in his actions in their

verdict on Baldwin's due process claim. However, based on the record before us, we are not able to conclude that the issues necessary for a decision on the First Amendment issue were clearly presented to the jury for a decision.

## III.

In her remaining points of error, Baldwin argues that the district court erred in granting judgment as a matter of law to the defendant on her due process claim against him in his individual capacity on the grounds of qualified immunity and in requiring her to prove that Daniels' actions were arbitrary and capricious in order to establish her procedural due process claim against him in his official capacity. We will address these claims together because our conclusion that Baldwin was not deprived of a constitutionally protected liberty or property interest resolves both arguments.

To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest. San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1991). Baldwin asserted that she possessed both liberty and property interests based on her (1) liberty interest in pursuing an occupation and her property interest in the profits of her business; and (2) property interest in her soliciting agent's license. Baldwin contends that she was deprived of these liberty and property interests without due process of law when Sheriff Daniels prohibited her from writing bonds at the Pontotoc County Jail without notice or an opportunity to be heard.

This court addressed a similar claim in Richards v. City of Columbus, 92-7359 (October 12, 1993)(Unpublished)(copy attached as Appendix 1).[*] In that case, the plaintiff Richards was licensed to write bail bonds in Mississippi. The municipal chief of police posted a notice at the city jail that

_____

[*] Unpublished opinions issued before January 1, 1996, have precedential value. See 5th Cir. R. 47.5.3.

Richards would not be able to make bonds at the Columbus Police Department. This action was taken without notice or hearing to Richards. This court assumed that Richards had a property interest in his state-issued bondsman license and that his state license could not be revoked without due process protection. However, it contrasted the more limited action taken against Richards. As in this case, Richards' state license was not revoked. Rather, like Baldwin, his ability to write bonds under his state license was merely restricted in a single municipality or county. After being barred from writing bonds at the Pontotoc County Jail, Baldwin retained her license to write bonds in other areas of the state.

The Richards court also noted that under Mississippi law Richards had no property interest in his ability to write bonds within a limited political subdivision such as a city or in his ability to have bonds written by him accepted by authorities in that political subdivision. Mississippi law expressly leaves the approval of tendered bonds to the discretion of the responsible officer. Miss. Code Ann. § 21-23-8. Discretionary statutes do not give rise to constitutionally protectable interests. Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 557 (5th Cir. 1988).

Because Baldwin's ability to have her bail bonds accepted at the Pontotoc County Jail is not a property or liberty right protectable by the Fourteenth Amendment, she did not suffer any unconstitutional deprivation when Sheriff Daniels barred her from doing so without notice or a hearing. On these facts, Baldwin cannot state a due process claim under § 1983. Accordingly, we need not address Baldwin's claims regarding qualified immunity or jury instructions relating to this claim.

IV.

For the reasons stated above, the judgment of the district court dismissing Baldwin's claim predicated on violation of her due process rights is AFFIRMED. However, we VACATE the district

court's order dismissing her First Amendment claim and REMAND for further proceedings consistent with this opinion.

AFFIRMED in part.

VACATED and REMANDED in part.

UNITED STATES COURT OF APPEALS


FOR THE FIFTH CIRCUIT



_____



No. 92-7359

Summary Calendar


_____




GUY RICHARDS, JR. d/b/a Richards

Bonding Company,



                                        Plaintiff-Appellant,



                        versus



THE CITY OF COLUMBUS, A Municipal

Corporation, and CHARLIE WATKINS,

Chief of Police,

Defendants-Appellees.

_____

Appeal from the United States District Court for the

Northern District of Mississippi

(CA EC90 123 B D)

_____

(October 12, 1993)

Before GARWOOD, JONES and EMILIO M. GARZA, Circuit Judges.[**]

GARWOOD, Circuit Judge:

Plaintiff-appellant Guy Richards (Richards), a former professional bail bondsman licensed by

the State of Mississippi, brought a state court action against the City of Columbus, Mississippi (City),

and its Chief of Police, Charlie Watkins (Watkins), alleging deprivations of his property rights without

_____

[**] Local Rule 47.5 pro vides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

9

due process, in violation of state and federal law. Defendants removed the action and moved for summary judgment. The district court granted that motion, and Richards appeals. We affirm.

## Facts and Proceedings Below

Richards wrote bail bonds in Columbus, Mississippi, and surrounding communities from the time he was first licensed in 1976 until December 13, 1988, when his bail bondsman license was revoked by the Mississippi Department of Insurance. This lawsuit concerns events occurring in early 1986. Richards acknowledges that prior to January 8, 1986, he owed the City money on forfeited appearance bonds extending back several years. As a result of Richards's default on these forfeited bonds, Watkins dictated a memo on January 7, 1986, to the effect that, effective January 8, at 7:00 a.m., Richards would not be able to make bonds at the Columbus Police Department. This memo was posted at the city jail in Columbus without prior notice to Richards.

After learning of the notice, Richards inquired at the Columbus Police Department and was informed by Assistant Chief of Police Petty Glover that Richards was surety on several forfeited outstanding bonds.[1] Richards was told in April 1988 that the total amount of the bonds forfeited at that time was $13,200. Upon advisement that the City would proceed against Richards on these bonds, Richards paid the City $6,200, leaving several thousand dollars still owed. On December 13, 1988, after a hearing at which Richards was present, the Insurance Department of the State of

---

[1]     There is some dispute between the parties as to whether Richards and Glover discussed the amount Richards owed on the forfeited bonds *prior* to the posting of Watkins's notice. We agree with the district court that this factual dispute is not material to the resolution of the due process claim because defendants' actions did not deprive Richards of any constitutionally protectable property right, and therefore summary judgment was not precluded.

Mississippi revoked Richards's bail bondsman license.[2]

Richards filed the present action in the Lowndes County Circuit Court on May 10, 1990. In his state court complaint, he alleged (1) that the City had failed to comply with statutory procedures governing collection of money owed the city on forfeited bonds, and (2) that Watkins's posting of the memo at the jail, without prior notice to Richards, deprived Richards of his state and federal constitutional property rights without due process. Following removal of the lawsuit to the United States District Court for the Northern District of Mississippi, defendants moved for summary judgment. The district court found that the defendants' actions did not implicate any property right of Richards under either state or federal law and granted the defendants' motion. Richards appeals only the dismissal of his due process claim.[3]

## Discussion

We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir. 1991). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

---

[2]     Mississippi law allows the Insurance Department to revoke a bail bondsman license for forfeiture of a qualification bond or default in payment on forfeited bonds. MISS. CODE ANN. § 83-39-15(b), (f).

[3]     Even before the district court, Richards focused on the due process claim to the exclusion of his claim that the defendants had not complied with statutory collection procedures on the forfeited bonds. Although the district court addressed the statutory collection claim, it found that Richards had not made a sufficient showing of how the defendants had violated statutory collection procedures.

We do not reach the statutory collection claim, as Richards does not re-urge the claim on appeal and has therefore abandoned it. *Cooper v. Sheriff, Lubbock County*, 929 F.2d 1078, 1081 n.1 (5th Cir. 1991).

In his due process claim, Richards asserts that he was deprived of his property interests in his bail bond business without due process, in violation of federal and state law, when Watkins posted the memo at the Columbus jail without any advance notice to Richards. U. S. CONST. amend. XIV; MISS. CONST., art. 3, § 14. Our threshold consideration must be to identify a property interest entitled to due process protection. *Brock v. Roadway Express, Inc.*, 107 S.Ct. 1740, 1747 (1987).

We assume *arguendo*, as did the district court, that Richards had a property interest in his state-issued bondsman license and that that property interest merited due process protection. Although there are no Mississippi cases so holding, as a general rule licenses required for the pursuit of a livelihood "are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 91 S.Ct. 1586, 1589 (1971). *See Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 750 (5th Cir. 1988) ("[A]n interest in a certificate or license that is a prerequisite to employment is a cognizable property interest, protectable by the procedural due process requirement of the Fifth Amendment . . . .").

Mississippi statutes set forth procedures for the revocation or suspension of a bondsman's license by the Mississippi Department of Insurance under certain circumstances, provided notice and a hearing are afforded the bondsman. MISS. CODE. ANN. §§ 83-39-15, *et seq.* These statutes do not, however, authorize a municipal chief of police to affect the validity of a license issued by state authorities, and, in fact, it is clear that Watkins's notice did not deprive, or even purport to deprive, Richards of his license to write bonds within the state of Mississippi. It is undisputed that Richards continued to write bail bonds in the municipalities surrounding Columbus after the date the notice was posted in Columbus and prior to the revocation of his license by the Mississippi Department of

Insurance. Thus the defendants' actions did not deprive Richards of any property interests in his bondsman license.

Even if Richards's property interest in his license was encompassed by the Fourteenth Amendment's protections, however, he did not have a property interest in his ability to write bail bonds in Columbus, Mississippi. Although Mississippi law prohibits sheriffs or other officials from accepting bonds from an unlicensed bondsman, MISS. CODE ANN. § 83-39-23, there is no provision in the Mississippi statutory scheme which mandates that such officials accept a bond from a bondsman merely because the bondsman is licensed by the state. Indeed, Mississippi law expressly leaves the approval of tendered bonds to the discretion of a police chief or other designated officer. "The chief of the municipal police or a police officer or officers designated by order of the municipal judge *may* approve bonds or recognizances." MISS. CODE ANN. § 21-23-8 (emphasis added). *See also* MISS. CODE ANN. § 99-33-7 (statute governing justice court, provides that it is "lawful . . . to take bond with sufficient sureties"). Because the police chief may approve bonds, it is reasonable to infer from the language of the statute that he may also decline to approve a bond. In his deposition testimony, Richards conceded that he needed the approval of a designated police officer in order to have bail bonds written by him accepted by that office or the local municipal court.

Richards had no constitutionally recognized property interest in his ability to have bonds written by him accepted in the Columbus, Mississippi, police department or municipal court, because approval of such bonds was at the discretion of Watkins, as chief of police. "Use of the word `may' as opposed to mandatory language as `shall' has been found to indicate a legislature's intention to bestow discretion on the [person] charged to apply the statute." *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988). Discretionary statutes do not give rise to

13

constitutionally protectable interests. *Id*. at 557-558.

Because Richards's ability to have bail bonds written by him accepted at the Columbus city jail is not a property right protectable by the Fourteenth Amendment, he did not suffer any unconstitutional deprivation of property when Watkins posted the memo at the jail, without prior notice to Richards, prohibiting acceptance there of bonds written by Richards. As the district court observed, defendants' actions, far from amounting to a deprivation of Richards's livelihood sufficient to require constitutional safeguards, constitute at most "the denial of a unilateral expectation to write bonds in a particular locale in which he had failed to meet his obligations as surety." The district court did not err in granting summary judgment for the defendants.

## Conclusion

For the reasons stated above, the judgment of the district court is

AFFIRMED.