IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-60859

THE HAMPTON COMPANY NATIONAL SURETY LLC, A Mississippi Limited Liability Company; JAMES DEAN, An Individual; JAMES HAMPTON GARDNER, An Individual

Plaintiffs-Appellants

v.

TUNICA COUNTY MISSISSIPPI; CALVIN HAMP, SR, Individually

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

A surety company and two of its agents appeal from a summary judgment that dismissed their various Section 1983 claims. We affirm that part of the judgment that dismissed a Due Process claim against the sheriff who barred them from writing bail bonds in one county. Finding disputes of material fact, we reverse judgment on that same claim against the county and on the First Amendment and Equal Protection claims against both the sheriff and the county based on the same events. We remand.

## I.  BACKGROUND

The issues in this case arise from the decision by Tunica County, Mississippi Sheriff Calvin Hamp, Sr., to remove the three Plaintiffs from a roster of bail bond agents approved to write bonds in that county.  The removal lasted from February 2005 until December 2006.   Removed were Plaintiff James Hampton Gardner, who is a professional bond agent, and his bail bonding business Hampton Company National Surety, LLC, which also is a Plaintiff.  Also removed was a third Plaintiff, James Dean, a licensed bail soliciting and bail enforcement agent employed by Gardner.  Relevant to the claims, both Gardner and Dean are white males, while the Sheriff is an African-American.  During the entire period, Gardner and Dean were in good standing with the Mississippi Department of Insurance which regulates their bail-bond licenses.

It is undisputed that Sheriff Hamp prohibited the Plaintiffs from writing bonds in Tunica County.  Disputed are the Sheriff's reasons.  The Plaintiffs allege that the Sheriff retaliated for Gardner and Dean's participation in exposing illegal conduct by the prior sheriff, and also for criticizing Hamp.  Also alleged is that the decision was racially motivated.

The Defendants alleged that the Plaintiffs' removal was because three criminal defendants they bonded failed to appear at a scheduled arraignment.  Two other bail bondsmen, both African-American, were taken off the approved list at the same time for similar reasons.  The Defendants assert that Plaintiffs remained off the approved list only because they failed to ask the Circuit Clerk to inform Hamp that the default was cured.[1]  The other bail bondsmen who were removed from the list promptly informed the Circuit Clerk that their arrearages were remedied, and they were again placed on the approved list.

---

[1] Dean also was not placed back on the roster because an investigation allegedly revealed he loaned money to a deputy in violation of state law.  Plaintiffs allege this happened well after the removal by the Sheriff and does not affect Dean's claims in this suit.

The Plaintiffs brought a Section 1983 suit against Sheriff Hamp in his individual capacity and against Tunica County. They alleged violations of their constitutional rights under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment, and the First Amendment. The district court granted summary judgment in favor of the Defendants on all claims, holding that Defendant Hamp was entitled to qualified immunity and that the claims against Tunica County failed because the Plaintiffs did not establish that a custom or policy of the County deprived the Plaintiffs of a clearly established constitutional right. The Plaintiffs timely appealed.

We review the grant of summary judgment de novo, applying the same standard as the district court. Facts are viewed in the light most favorable to the nonmovant. Summary judgment is appropriate "when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." Mowbray v. Cameron County, Tex., 274 F.3d 269, 278-79 (5th Cir. 2001).

## II. DISCUSSION

The Plaintiffs have brought their claims under a statute that provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A "municipality," which in this jurisprudence includes other local governmental units such as a county, is a "person." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

Though the statute is broadly written, individual government officials performing official and discretionary functions have a qualified immunity from personal liability. We will later discuss the two parts of a sequential test that determines whether the immunity applies.

A county's liability under Section 1983 arises when "official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution . . . ." Bennett v. City of Slidell, 728 F.2d 762, 766 (5th Cir. 1984).

The district court determined that Sheriff Hamp was entitled to qualified immunity on the Due Process and Equal Protection claims. With regard to the First Amendment claim, the court held that the Plaintiffs could not demonstrate that the actions of Hamp were objectively unreasonable. As to Tunica County, the court also granted summary judgment because the court found no deprivation of a constitutional right.

With these standards, we review the district court's ruling. The Plaintiffs' claims against Sheriff Hamp and Tunica County are identical. Even so, on the Due Process claims, separate analyses regarding the Sheriff and the County are necessary. We do not need to make that separation for the Equal Protection and Free Speech analysis.

(a) Due Process claim against Sheriff Hamp

Procedural Due Process "imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). When a property interest is taken, "some form of hearing is required" before a final deprivation of the interest. Id. The Plaintiffs allege that Sheriff Hamp violated these rights by removing them from the approved roster without following the procedures required for suspending or revoking a state-issued bail bondsman license.

In determining whether qualified immunity applies to this official's actions, a two-part sequential test is applied. First we determine, viewing the summary judgment evidence in the light most favorable to the plaintiff, whether some evidence supporting the violation of a constitutional right exists. Saucier v. Katz, 533 U.S. 194, 199 (2001). Whether there is evidence to support the

conclusion that a constitutional right was violated is a legal question. Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Only if there is some evidence to support the violation of a constitutional right do we analyze whether "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir. 2007). Applying this standard, we decide "whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action." Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004).

To overcome the first part of the qualified immunity defense, the Plaintiffs must demonstrate that a state-licensed fidelity and surety company and its agents who write bail bonds have a property right to issue those bonds in a particular county. This is the necessary right because that is the limit of what the Sheriff took, and from whom he took it. When there is no "property interest, there is nothing subject to Due Process protections and our inquiry ends." Cabrol v. Town of Youngsville, 106 F.3d 101, 105 (5th Cir. 1997). Mississippi law controls on whether a property interest exists: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law . . . ." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

The Plaintiffs argue that a property right arises from the state statutes that establish the licensing and regulatory rules for bail bonds in Mississippi. See Miss. Code Ann. §§ 83-39-1 et seq. Agents writing bail bonds in Mississippi must be licensed by the Mississippi Commissioner of Insurance under this statutory scheme – not by county sheriffs.

The argument is based on a valid premise, namely, that a state-issued license can create a property interest cognizable under the Due Process clause:

> Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses . . . involves state actions that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

Bell v. Burson, 402 U.S. 535, 539 (1971). In this case, no state-issued license has been taken. Any taking here was limited to a right to write bonds in one county. Our issue is whether the state license was qualified by the right of a sheriff to limit its use in a county because of acts or omissions in that county.[2]

Plaintiffs have cited us to no appellate authority to support their position that a sheriff may not within his county at least temporarily restrict the issuer of bail bonds. However, there is recent state trial court authority that this Sheriff had no statutory authority to suspend these Plaintiffs; review of that judgment is pending in the Mississippi state appellate system. Hampton Co. Nat'l Sur., LLC v. Tunica County, No. 2005-0391 (Miss. Cir. Ct. 11th Dist. Apr. 3, 2008) (order granting injunctive and declaratory relief), appeal docketed, 2008-TS-00756 (Miss. 2008). The result may be to define the relevant rights of bail bondsmen. If a sheriff is found not to have the discretion exercised here, bail bondsmen might have a reasonable expectation that their right to write such bonds may not be taken. No discretion in the official and a reasonable expectation in the citizen are central elements of a protected property interest. Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005).

Though the decision we are referencing is that of a state trial court, such a decision may be "attributed some weight" on interpreting state law. Comm'r of Internal Revenue v. Bosch's Estate, 387 U.S. 456, 465 (1967). One of the most

---

[2] We were informed at oral argument that the three judges of the state circuit court district that includes Tunica County have entered an order that bail bondsmen who default in certain ways may be suspended by the court from issuing bonds. We were not told what process is given before such a suspension. That order reveals that this appeal presents only one of multiple current questions about local control of a state-licensed surety.

persuasive federal procedure treatises states that a federal court may consider a state trial court decision when searching for the meaning of state law:

> State trial court decisions are treated somewhat differently, and quite naturally, with somewhat less deference than is given to state appellate courts. They also are entitled to consideration as an indication of what the state law is, but in and of themselves they are not controlling on the federal courts if they are not regarded as precedents within the state itself.

19 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4507 (2008).

Sheriff Hamp, on the other hand, has cited a precedent from this court in which we made an Erie guess as to whether a bail agent had a protectible property interest in writing bonds in a particular county in Mississippi. Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001). Considering an almost identical set of facts, we held that the ability of a bail bondsman to have bonds accepted in a particular county is not a property or liberty right protected by the Fourteenth Amendment. Id. We based that decision on what we found to be the sheriff's discretion. Id. As we noted above, the recent state trial court ruling in the related Hampton case found a sheriff to have no discretion to suspend bail bonding privileges. Hampton Co. Nat'l Sur., No. 2005-0391, at ¶ 6.

What Mississippi ultimately concludes on the point will control in the future, but public officials are not oracles. Whatever the law may be one day, the best understanding of the law when Sheriff Hamp acted was that expressed in Baldwin. Even if the Sheriff violated a constitutional right, the second step in the qualified immunity analysis is to examine whether "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Freeman, 483 F.3d at 410-11. The Baldwin opinion is the principal authority relevant to the time at which Defendant Hamp acted. Accordingly, there was no clearly established law in Mississippi that

would have made his actions objectively unreasonable. An uncertain right cannot be "a clearly established" right. Qualified immunity applies to the claim that Sheriff Hamp violated Due Process rights.

(b) Due Process claim against Tunica County

A local governmental unit does not receive the qualified immunity that shields Sheriff Hamp. Yet neither is a "municipality" liable under Section 1983 based on respondeat superior. Instead, "municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The concept of "policy" in this standard is broader than laws or actions that have been given formal approval through an entity's policymaking channels. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005). When the person who committed the challenged act is in charge of policymaking in that part of the government, "policy" can sometimes be found to have been established by the very act itself. Id. The act must be by a final decisionmaker who also is the policymaker, unconstrained by policies imposed from a higher authority. Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1247 (5th Cir 1993). In addition, even absent a policymaker's act or a formal policy, enforcement of a sufficiently established custom or practice may be the basis for liability. Pineda v. City of Houston, 291 F.3d 325, 329-31 (5th Cir. 2002) (must be a "persistent and widespread practice"). No evidence exists here of a formal policy or a custom, so any liability must arise from the single acts of this Sheriff.

As to this Sheriff's policy role in the liability analysis, this Circuit has already held "Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996); see also McMillian v. Monroe County, Ala., 520 U.S. 781, 784-93 (1997) (whether a sheriff is a policymaker is

a state-law question). Determining which bonding companies were authorized to write bonds at the Tunica County jail logically is part of that law enforcement authority. The Sheriff's decision to deny the Plaintiffs the right to issue bonds is the kind of single decision by the relevant policymaker that can be the basis of liability.

Though Mississippi sheriffs implement policy, there must also be some evidence to withstand summary judgment that this County through this Sheriff's actions was the moving force behind and direct cause of the alleged injury. Bd. of Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404-05 (1997); see also Williams v. Kaufman County, 352 F.3d 994, 1013, 1014 & n.66 (5th Cir. 2003) (deliberate indifference is not a factor when the county through its policymaker has directly caused the alleged injury). We find such evidence – there is no dispute that it was the chief policymaker's decision that was the moving force and direct cause of the removal.

All the elements of a Due Process claim against Tunica County are therefore present, except for whether there was any constitutional right in the first place. Unlike in the determination of qualified immunity for the Sheriff, the County cannot rely on there being no clearly established right when the Sheriff acted. Instead, a county may be liable even when the property right had not been clearly known. Accordingly, the litigation on appeal in the Mississippi state courts is of significance. If the state appellate court in resolving these same parties' companion case rejects the Baldwin analysis, Tunica County may face liability. The state circuit judge did reject Baldwin and found no discretion in a sheriff to suspend bond-writing rights:

> Being of the opinion that bails and bail bonding is a matter now
> completely governed by Mississippi statute and finding that Miss.
> Code Ann. § 89-39-15 restricts the authority to suspend and/or
> revoke a bail bonding license to the Mississippi Department of
> Insurance, this court hereby declares that the sheriff of Tunica
> County, Mississippi, lacked the authority to suspend or revoke the

9

> bail bonding privileges of Hampton and/or Dean. As such, this court further finds that the conduct of the sheriff was not in compliance with Mississippi law.

Hampton Co. Nat'l Sur., No. 2005-0391, at ¶ 7.

What to do with this current uncertainty becomes our question. Certifying the question to the Mississippi Supreme Court is a possibility. See Miss. R. App. P. 20. We will not take that step. Because either that court or the intermediate state appellate court may in due course be addressing this very question, a due respect for the workload of both state appellate courts suggests we not add to it with a matter duplicative of something now before it.

We note in this context that both parties claimed after oral argument that they see no basis to expect the state appellate courts will address issues relevant here. Our view of what is pending before the Mississippi appellate courts causes us to wonder, but the point need not be resolved. If a stage is reached in the resolution of the other matters remanded by our decision today that makes addressing this issue desirable, but the state appellate system has not yet resolved the companion case, the district judge may hear from the parties as to whether in fact they both still take the position that the state decision is irrelevant to the county's liability on the Due Process claim. In sum, the district court can decide how to proceed in the most efficient manner.

We reverse the summary judgment that Tunica County had no liability under the Due Process claim and remand for further proceedings.

(c) Plaintiffs' Equal Protection claim

The Plaintiffs' second claim is for violation of the Equal Protection Clause of the Fourteenth Amendment. To establish their claim for discrimination under that clause, the Plaintiffs must demonstrate that they have been treated differently due to their race; if so, the different treatment "will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." Sonnier v. Quarterman, 476 F.3d 349, 368 (5th Cir. 2007).

A plaintiff must also allege that the unequal treatment stemmed from a discriminatory intent. Id. ("Even if a neutral law has a disproportionately adverse impact . . ., it is unconstitutional under the Equal Protection Clause only if the impact can be traced to a discriminatory purpose."). The district court granted summary judgment to Defendants on the Equal Protection claim.

The Plaintiffs allege that Sheriff Hamp removed them from the approved agent list and kept them off the list because of their race. As a reminder, the Plaintiffs are white, and Sheriff Hamp is African-American. Although black bail bondsmen were also removed from the approved list at the same time as the Plaintiffs, the Plaintiffs allege that the other bondsmen were almost immediately placed back on the approved list. Sheriff Hamp argues that he removed the Plaintiffs because they failed to produce defendants at an arraignment and not because of any racial animus.

There are two components of the discriminatory conduct alleged by the Plaintiffs. First is their initial removal from the approved roster. It is undisputed that both white and black bail bondsmen were removed from the approved list at the same time, ostensibly for not having criminal defendants appear. Therefore, the Plaintiffs cannot show divergent treatment of similarly situated white and black individuals with regard to the initial removal.

The second component of the potentially discriminatory conduct is the continued removal of the white bail bondsmen from the approved list while shortly after their removal, the black bail bondsmen were reinstated. The Plaintiffs allege that they were kept off the roster because they are white. The Sheriff alleges they were not reinstated because they failed to inform the Circuit Clerk that they had cured the deficiencies on their bond.

To support his interpretation, the Sheriff testified that the Circuit Clerk was responsible for informing him that the arrearages had been satisfied. The Clerk testified that she would provide a receipt to individual bondsmen when

they satisfied their arrearage. The bondsmen were then responsible for taking the receipt to the Sheriff's office to be placed back on the approved roster. However, Plaintiff Dean testified that when he followed these steps and presented his proof at the Sheriff's office, he was told that he would not be placed back on the approved roster. Dean stated that he attempted to speak to the Sheriff about going back on the list but could never speak with the Sheriff.

Taking a view of the evidence that is favorable to the Plaintiffs, we see support for the proposition that the Sheriff removed Plaintiffs from the approved list and then did not reinstate them after they satisfied their arrearages; similarly situated black bail bondsmen were reinstated. This evidence is sufficient to demonstrate a discriminatory purpose if it "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Priester v. Lowndes County, 354 F.3d 414, 424 (5th Cir. 2004) (citation omitted).

There is a factual dispute about Hamp's possibly disparate treatment of white and black bail bondsmen. There is no qualified immunity for racial discrimination as such discrimination is clearly unconstitutional. The County would also be liable if all the elements for municipal liability are shown. Consequently, we reverse judgment on the Equal Protection claim as to both Defendants and remand.

(d) First Amendment claim

The final claim is that Sheriff Hamp's actions violated the Plaintiffs' First Amendment rights. There are four elements to a cognizable First Amendment claim: (1) an adverse decision; (2) speech that involves a matter of public concern; (3) a plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the

speech must have motivated the defendant's action. Breaux v. City of Garland, 205 F.3d 150, 156 (5th Cir. 2001).

The Plaintiffs allege that they were removed from the approved list and then not reinstated for two reasons: they assisted in the investigation of the predecessor sheriff regarding the extortion of bail-bonding companies, and they sent a letter to the editor of a local newspaper expressing concern over Sheriff Hamp's handling of bail bondsmen. The Plaintiffs assert that the Sheriff's argument that they were removed and not reinstated because of bond arrearages was a pretext. The newspaper editorial critical of Sheriff Hamp was published only two months before the Plaintiffs were removed as approved bail bondsmen.

In one of the earlier discussed precedents, we found that a bail bondsman who was removed from the approved list after complaining about a new rotation system for bail bonding, had a cognizable First Amendment claim. Baldwin, 250 F.3d at 945. Though the Baldwin court found no liability on that bail bondsman's Due Process claim, it reversed the judgment dismissing the claim that a sheriff had retaliated for that bail bondsman's complaint about how the sheriff was handling bonds. We remanded that claim for a trial. It is true that in the present case, the Plaintiffs were removed along with other bail bondsmen who have not been shown to have made any controversial statements or criticisms. However, as with the Equal Protection claim, the failure to reinstate the Plaintiffs distinguishes the entire action by the Sheriff against these Plaintiffs from his entire action against the other bail bondsmen.

Sheriff Hamp alleges that the only reason the Plaintiffs were not replaced on the approved list was because they failed to take the appropriate steps to notify the Sheriff that the arrearages had been satisfied. The Plaintiffs, however, present evidence that in fact they cured the arrearages shortly after being removed. That is not disputed by Sheriff Hamp. They allegedly contacted both the Circuit Clerk and the Sheriff's office, but they were not placed back on

the approved list.  The Plaintiffs allege the failure to reinstate them was because of their prior criticism of the Sheriff.  The Sheriff alleges it is because they failed to inform his office properly that the arrearage was cured.

Construing the evidence in the light most favorable to the Plaintiffs, we conclude that Hamp was not entitled to summary judgment on this claim.  There was a genuine issue of material fact on the question of the credibility of Hamp's justification for not reinstating the Plaintiffs after they satisfied the arrearages.  Therefore, summary judgment was not appropriate on the Plaintiffs' First Amendment claim.  See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 873-74 (1982) (plurality).

We AFFIRM in part and REVERSE and REMAND in part.