# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60444
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 13, 2014

Lyle W. Cayce
Clerk

MARIA SALCIDO,

Plaintiff - Appellant

v.

UNIVERSITY OF SOUTHERN MISSISSIPPI; MARTHA SAUNDERS,
Individually and Officially; REBECCA WOODRICK, Individually and
Officially; CHARLES WEST, Individually and Officially,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:11-CV-173

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff Maria Salcido appeals the district court's grant of summary
judgment in favor of the University of Southern Mississippi; Dr. Martha
Saunders, individually and officially; Dr. Rebecca Woodrick, individually and
officially; and Dr. Charles West, individually and officially (collectively, "the
Defendants") on her claims under 42 U.S.C. § 1983 that the Defendants

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-60444

discriminated against her on the basis of race, national origin, and ethnicity, and denied her specific constitutional rights.  AFFIRMED.

## I.    Background

Salcido, a foreign-born woman of Latin American origin, was a part-time graduate student in the marriage and family therapy ("MFT") program at the University of Southern Mississippi (the "University").  To obtain a master's degree, students in the MFT program must complete 500 clinical hours by providing therapy to clients at the university clinic or through an externship. Salcido was the only Latino-born student in the class of thirteen students, and she claims she was not given the same opportunities to accumulate the required clinical hours as her American-born, Caucasian peers.

Salcido also alleges that Drs. Hinton, Grames, and Adams[1] at various times engaged in discriminatory actions and made discriminatory remarks to her.  Salcido claims that Hinton told her he wanted her to work exclusively with Latino clients[2] and refused to provide her with an externship when she requested one in the fall of 2008[3] so that she could gain the hours required to graduate by August 2009.[4]  Salcido also alleges that Adams repeatedly verbally

---

[1] Salcido did not name these professors as parties to the suit.  Grames was the MFT program director.  Adams was one of her professors, and Hinton assigned clinical hours and externships.

[2] Salcido stated that Hinton told her she needed to be "in the right setting" for completing her clinical hours and that this statement was clearly meant to indicate that she could only have Latino clients.  Hinton disputes that the statement indicated he wanted her to exclusively treat Latinos; however, the Defendants do not deny that Hinton used that phrase when discussing Salcido's options.

[3] In his deposition, Hinton states that he could not provide Salcido with an externship because externship positions are typically made one year in advance, and she did not request one until a few months before she wanted to begin the externship.  He also claims to have offered her an externship in the spring 2009 semester, but Salcido turned it down.

[4] Because Salcido was a part-time student, graduating by August 2009 would have been at least one year sooner than expected.

2

No. 13-60444

admonished her, which Salcido attributes to Adams's belief that Salcido has a language barrier. Salcido also alleges that Adams learned of a critical evaluation written by Salcido that was supposed to remain confidential and afterwards retaliated against Salcido by treating her more harshly than other students.

Salcido complained to multiple administrators, including West. She later filed a formal complaint with the AA/EEO office as well as the Office of Civil Rights of the U.S. Department of Education ("OCR"). Woodrick met with Salcido to begin the appeals process; during that meeting, Salcido informed Woodrick that she had retained counsel. At that time, Woodrick forwarded the complaint to the University's attorney. Woodrick also suspended her investigation pending the outcome of the OCR's investigation. After the OCR inquiry found that the University had not violated Title VI with regard to her allegations, the AA/EEO investigation was closed with no further investigation.

After the AA/EEO investigation was closed, the MFT department proposed a plan to help Salcido complete her degree requirements, despite having relocated to Wisconsin. She rejected the plan and wrote a letter to Saunders reiterating her complaints. One month later, she filed this suit, asserting various claims under §1983, including that the Defendants deprived her of rights guaranteed by the First Amendment, Fourteenth Amendment Due Process Clause, and Fourteenth Amendment Equal Protection Clause.[5]

## II.    Discussion

We review *de novo* a district court's grant of summary judgment. *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 355 (5th Cir. 2012). Summary judgment

---

[5] Salcido also asserted a state-law claim for breach of contract. That claim was later remanded to state court.

3

No. 13-60444

is appropriate if the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Because the burden of production at trial would be on Salcido, the Defendants need only demonstrate an absence of evidentiary support in the record for her case. *See Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). This court may "affirm a grant of summary judgment on any grounds supported by the record and presented to the [district] court." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

a. Section 1983 Individual Capacity Claims

Salcido raised claims against Saunders, Woodrick, and West in their individual capacities. To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation. *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). Furthermore, supervisory officials are only liable under § 1983 if they affirmatively participate in the acts causing the constitutional violation or implement unconstitutional practices that result in a constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Supervisory officials are not subject to respondeat superior liability under § 1983. *Cozzo v. Tangipahoa Prish Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002).

i. Procedural Due Process

Salcido argues that the Defendants deprived her of procedural due process by denying her clinical hours and externships and by not following the grievance procedures guaranteed by the University. To establish a procedural due process claim, the plaintiff must show that she was "denied life, liberty, or property protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012). Property or liberty interests can be created by

4

the policies and procedures of state universities. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972). If a due process entitlement exists, the party is entitled to "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (citation and internal quotation marks omitted).

To create a due process entitlement, there must be no discretion in the official and a reasonable expectation that the individual will receive the protected property interest. *See Hampton Co. Nat'l Sur. v. Tunica Cnty, Miss.*, 543 F.3d 221, 226 (5th Cir. 2008). The MFT Handbook clearly states that the faculty has the discretion to determine who qualifies for externships, based on the student's "clinical readiness," which includes her "emotional maturity." Therefore, the district court properly held that there was no property interest in clinical hours. Even if there were a property interest, there is no evidence in the record that any of the Defendants, including West, who supervised the department that housed the MFT program, were either directly involved in denying Salcido clinical hours or implemented policies that deprived Salcido of clinical hours.[6] *See Wernecke*, 591 F.3d at 401. Therefore, the district court properly granted summary judgment in favor of the Defendants on Salcido's claim of due process deprivation regarding access to additional clinical hours and externships.

Salcido further claims that she was deprived of a constitutionally protected property interest in the grievance procedures provided by various student handbooks. *See Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 346 (5th Cir. 2006) (state law procedural guarantees create a property interest). The

---

[6] Indeed, the record indicates that Hinton was responsible for assigning clinical hours and externships and that Hinton told Salcido he did not have an externship available for her when requested.

No. 13-60444

MFT Student Handbook provides that a student with a grievance should make an appointment with the department chair, and the Student Handbook states that the department chair should "normally" be responsible for filing a grievance after resolving an issue. The Student and Faculty Handbook further provides a formal procedure for bringing complaints to the AA/EEO Office, which explains that the AA/EEO director will investigate claims and make a written notice of the decision. Finally, after the AA/EEO director makes her decision, the complaining student can appeal the determination directly to the President of the University within fifteen days.

The district court correctly found that West did not violate any procedural guarantee enumerated in the MFT Student Handbook: he met with Salcido, as required. While the Student Handbook does suggest that the department chair should normally file a grievance, it is discretionary and therefore does not create a procedural right. *See Hampton Co.*, 543 F.3d at 226; *see also Whiting*, 451 F.3d at 346 (stating that where a handbook states an official should "normally" communicate a result by a particular date, the word "normally" makes compliance with the deadline discretionary).

The grievance procedures outlined by the various student handbooks do not impose any duties on Saunders. As the University President, Saunders is only involved in formal complaints at the time of appeal. While Salcido did write a letter to Saunders, this letter was not written until after the events took place, and Salcido never appealed the AA/EEO's determination. Salcido has not produced evidence that Saunders either participated in the alleged due process violations or implemented unconstitutional practices that denied Salcido of her due process rights; therefore, the district court properly granted summary judgment in favor of Saunders on this issue. *See Wernecke*, 591 F.3d at 401.

No. 13-60444

Neither party disputes that Woodrick did not strictly follow the procedures outlined in the Student and Faculty Handbook. Salcido filed her AA/EEO complaint on June 2, 2009, and because Woodrick suspended her investigation pending OCR's determination, she did not issue her determination in the timeframe provided by the Student and Faculty Handbook, nor did she perform her own investigation.

Woodrick invoked qualified immunity. The burden is therefore on Salcido to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Woodrick is entitled to qualified immunity if her conduct was "objectively reasonable." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). The reasonableness of a defendant's actions must be judged from the perspective of a reasonable official in the same situation with the same knowledge. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (holding that an officer's actions are judged from the perspective of a reasonable officer confronted by the same facts and circumstances without regard to intent or motivation).

Salcido does not provide evidence that it is unreasonable to suspend an investigation where there is a pending OCR hearing and the student has retained counsel. *See id.* Accordingly, the district court did not err in finding that Woodrick was entitled to qualified immunity with respect to Salcido's procedural due process claim and granting summary judgment on this issue.

### ii.    Substantive Due Process

Substantive due process requires public officials exercising their professional judgment to do so in a nonarbitrary and noncapricious manner. *Lews v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630–31 (5th Cir. 2011). Salcido claims that her substantive due process rights were violated when the Defendants failed to provide her with the opportunity to obtain sufficient clinical hours to obtain a master's degree in the MFT program. Her

7

claims fail for two reasons: (1) none of the individual defendants made decisions in assigning her clinical hours, and (2) there is no constitutionally protected property interest in receiving the clinical assignments or externships. *See Hampton Co.*, 543 F.3d at 226. Even assuming that Salcido had a property interest in the clinical hours, West, who is the only defendant associated with the MFT department, cannot be held purely vicariously liable for the actions of his subordinates who denied Salcido her hours. *Cozzo*, 279 F.3d at 286. There is no evidence that he was directly involved in denying her those hours or that he instituted any policies that would have led to those hours being denied. *Wernecke*, 591 F.3d at 401. Therefore, the district court properly granted summary judgment on this issue.

### iii.     Equal Protection

Salcido makes two equal protection claims: that she was given fewer clinical hours than non-Hispanic Caucasian and American-born students and that the Defendants failed to remedy the unlawful discrimination. Salcido's first equal protection claim fails because none of the named Defendants made decisions regarding clinical assignments and externships, and Salcido has not provided competent evidence that they encouraged discriminatory behavior or instituted policies that led to her receiving fewer clinical hours. *See, Cozzo*, 279 F.3d at 286; *Wernecke*, 591 F.3d at 401. As to her second claim, Salcido has provided no evidence that any departures from the grievance procedures stemmed from discriminatory intent. *See McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012) (requiring plaintiffs to show that their treatment was "different from that received by similarly situated individuals" and that the treatment "stemmed from a discriminatory intent"). Nor has she shown that other similarly situated individuals who engaged the grievance procedures were treated more fairly. *See id.* The district court properly granted summary judgment on this claim.

No. 13-60444

iv.   First Amendment

Salcido further claims she faced retaliation for criticizing Adams in a confidential evaluation.   Salcido's First Amendment claim suffers from the same flaw as her other claims: there is no evidence in the record showing that the individual Defendants participated in, approved, or implemented policies that caused her injuries.  *See Wernecke*, 591 F.3d at 401.   Furthermore, there is no evidence in the record that the named Defendants were responsible for revealing the evaluation.  *See id.*  Therefore, the district court properly granted summary judgment on this issue.

a. Section 1983 Claims Against the Defendants in their Official Capacities

Section 1983 provides a cause of action when a "person" acting under the color of law deprives an individual of rights ensured by the "[c]onstitution and laws."  We have previously held that state universities are not "persons" under § 1983, and therefore, the statute does not provide a cause of action.  *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002).   Therefore, the district court properly granted summary judgment in favor of the University.

Salcido also sued Saunders, Woodrick, and West in their official capacities.  Because an official-capacity suit for damages is treated as a suit against the state entity, the district court properly granted summary judgment in favor of Saunders, Woodrick, and West for any damages related to the official capacity claims.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citation omitted)).  Although Salcido's claim for prospective non-monetary relief against the individual Defendants in their official capacities is not barred by state sovereign immunity,  *see Nelson*

9

No. 13-60444

*v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321–22 (5th Cir. 2008), she has not identified an unconstitutional policy against which an injunction or other non-monetary relief could issue.[7]

AFFIRMED.

---

[7] She also fails to state a cognizable claim for relief in this regard. Her brief vaguely alludes to the relief sought stating that she "has consistently asked . . . that USM be enjoined to provide her with a work environment free of discriminatory conduct and that, as an equitable remedy, she be provided the Degree she has earned by enduring the discriminatory hardships described herein." She fails to cite any authority supporting such "relief." *Gann v. Fruehauf Corp.*, 52 F.3d 1320, 1328 (5th Cir. 1995)(failure to properly brief an issue waives that issue). She specifically fails to cite any authority that the court appropriately could compel the award of a degree for which a student, such as Salcido, admittedly has not yet qualified.