# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2011

No. 11-40456
Summary Calendar

Lyle W. Cayce
Clerk

RAY P. LEWIS,

Plaintiff - Appellant

v.

UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON;
DR. GARLAND ANDERSON, Provost and Dean of Medicine, in His Official
Capacity; DR. TETSUO ASHIZAWA, Then Chairman of the Neurology
Department, in His Official Capacity; KIRK RODEN, Department
Administrative Head; DR. CLAUDIO SOTO; DR. PEDRO FERNANDEZ-
FUNEZ

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:

In this action brought under 42 U.S.C. § 1983 for wrongful termination,
Plaintiff-Appellant Ray P. Lewis ("Lewis") appeals the district court's grant of
summary judgment on his claims against Defendants-Appellees University of
Texas Medical Branch at Galveston ("UTMB"), Dr. Garland Anderson
("Anderson"), Dr. Tetsuo Ashizawa ("Ashizawa"), Kirk Roden ("Roden"), Dr.

No. 11-40456

Claudio Soto ("Soto"), and Dr. Pedro Fernandez-Funez ("Fernandez-Funez"). We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Until his termination in 2008, Lewis was employed by UTMB, a state agency, to provide information technology support. In that role, Lewis served three UTMB departments, including Neurology, the department for which Dr. Ashizawa served as Chair and in which Drs. Soto and Fernandez-Funez worked. According to Lewis, by at least late 2007, he had problems with members of the Neurology department engaging in activities, and requesting Lewis to engage in activities, which Lewis believed violated UTMB security policies. Lewis's solution was to limit Neurology department staff's administrative access to their computers, so that Lewis could review and decline activities he felt breached UTMB policy. Lewis refused requests to allow greater access by the Neurology department staff. These actions lead Drs. Soto and Fernandez-Funez to complain about Lewis's "inflexibility" to his supervisor, Marie Camp ("Camp"). In an email to colleagues, Dr. Soto expressed a desire to "get rid of the R problem."

In early 2008, at about the time of these complaints, Lewis requested a salary adjustment to bring his salary in line with the average of similar employees. On March 1, 2008, the request was partially granted.

Shortly thereafter, on March 20, 2008, Camp and Roden, the department administrator for the Neurology department, gave Lewis a performance evaluation. The evaluation provided Lewis an overall score of "occasionally meets," the second highest of five levels. The evaluation also noted, however, certain deficiencies in Lewis's interaction with the colleagues for whom he provided information services. The evaluation stated Lewis "needs to become

more professional in dealing with the departmental customers and providing their services."[1]

Lewis refused to sign the evaluation, believing that it placed disproportionate emphasis on Neurology department members' complaints, which Lewis believed were baseless and originated out of his responsibility to enforce UTMB security policies. According to Lewis, because Roden would not inform him of the reason for the noted deficiencies, Lewis conducted an in-person survey of the UTMB employees he supported. After Dr. Fernandez-Funez complained that Lewis could "use those surveys to identify the people getting him in trouble," Roden ordered Lewis to cease the survey, telling Lewis certain employees possibly felt "harassed." Lewis ceased the survey, but responded that he was "following the explicit directive [Roden] gave [him] to contact Neurology users" and "to identify what problems exist and [f]ormulate a solution[ ]."

On March 31, 2008, Camp issued a memorandum to Lewis providing a description of issues related to Lewis's work, and expectations as to each issue. The memorandum stated that "[i]t would be helpful to us if you would develop an action plan by no later than Monday, April 7, 2008," and requested Lewis to create proposed meeting agendas for weekly meetings with Camp to discuss Lewis's progress.

Lewis, however, did not draft an action plan nor a meeting agenda, but rather filed a grievance with Ashizawa, alleging that his evaluation was biased and without support, and that the "employee coaching" was in fact a disciplinary action representing a "collaborative attempt[] to justify [his] unfair compensation rate." Ashizawa denied the grievance on April 14, 2008, noting,

---

[1] The evaluation in the record also states Lewis was to "[d]evelop mutually accepted goals and metrics to improve service delivery over the next six (6) months." Lewis, however, stated that the version he was shown on March 20, 2008 did not include that language and that it was instead added at a later date.

"during the past year I repeatedly heard complaints from our basic science faculty regarding your inflexibility, which resulted in negative effects on the efficient operations of our research activities."

On April 18, 2008, Camp and Roden issued a joint "Memo of Job Performance Expectations & Improvement Plan," laying out the same issues and expectations as the March 31 memo. The memo again requested Lewis create an "action plan," extending the deadline to April 25, 2008, and again requested Lewis prepare agendas for weekly coaching and team management meetings.

Rather than complete the action plan or agendas, Lewis contacted UTMB employees for whom he provided service and solicited letters of support. A number of employees obliged, including at least two assistant professors in Neurology, but not Dr. Soto or Dr. Fernandez-Funez. On April 29, 2008, Lewis then appealed the denial of his grievance to Dr. Anderson, the Dean of UTMB's School of Medicine and Provost of UTMB. That same day, Lewis met with Camp and Roden for the purpose of developing his action plan. Lewis, however, refused to develop the plan on the ground that his grievance had been filed, and that he believed their actions were inappropriate.

Around this same time, Roden requested Lewis inquire with Information Systems about the status of a project. Instead of complying, Lewis responded, "You seem to have a close relationship with the IS director and may get a more immediate response if you pose your question to him[;] [i]n the meantime, my best option is to be patient enough for the process to take place."

On May 12, 2008, Camp and Roden issued another memo to Lewis, which purportedly "serve[d] as a final written reminder due to [Lewis's] failure to maintain standards of conduct suitable and acceptable to the work environment as required by UTMB [Policy], specifically [Lewis's] failure to follow instructions and to cooperate with [his] supervisor, resulting in impairment of the work function." The memo further ordered Lewis to "develop[] a performance

improvement plan, and fully participat[e] in coaching meetings." The memo warned Lewis that further failure to adhere to the expectations could result in his termination.

Lewis finally completed and submitted a plan to Camp on May 15, apparently stating that he would continue to follow UTMB policies. Camp, however, found Lewis's plan deficient as it omitted information that was needed in a performance improvement plan. She therefore emailed Lewis a model plan, and requested that he "define the exact steps [he] [would] take to meet the expectations in the areas [he] need[ed] to improve upon." On May 19, Lewis submitted his revised plan, which consisted of the form plan Camp had emailed to him with following language as the action to be taken for each area of improvement:

> WILL CONTINUE TO COOPERATE AND WILL CONTINUE TO FOLLOW UTMB POLICIES AND PROCEDURES AND BEST PRACTICES (SEE ATTACHED)

The referenced attachment reiterated the complaints of his previous grievance, alleging that Neurology's complaints were baseless and arose out of his enforcement of UTMB policies, and that Camp was attempting to force him to acknowledge that his behavior was deficient in an attempt to justify a lower salary. Camp did not find Lewis's submitted plan satisfactory.

On May 30, 2008, Dr. Anderson denied Lewis's grievance, noting, "you were asked to submit a Performance Improvement Plan . . . [;] [t]o date, you have not provided the plan." Moreover, Dr. Anderson found "no evidence that you have been asked to engage in illegal conduct." Dr. Anderson concluded, "your refusal to cooperate with your supervisors is due to an inability to accept constructive criticism and work productively with others."

On June 4, 2008, Lewis was notified by letter of his termination by Camp, "due to [his] continued failure to maintain standards of conduct suitable and

acceptable to the work environment, specifically [his] failure to follow instructions and to cooperate with [his] supervisor." Lewis appealed his termination, and, pursuant to UTMB policy, a hearing was held on August 19, 2008, at which Lewis was represented by counsel. The hearing panel, consisting of three individuals not named as parties here, heard testimony from Ashizawa, Camp, Roden, Lewis, and the director of information services for UTMB. The panel found that "UTMB proved by a preponderance of the credible evidence that good cause exists for [Lewis's] termination." In particular, the panel found "[i]t is evident that [Lewis] did not respect his supervisors as he has repeatedly refused to sign job related paperwork and did not actively participate in the [Performance Evaluation Process]." Lewis was notified of the panel's decision on September 4, 2008.

Thereafter, on March 6, 2009, Lewis brought the instant suit under 42 U.S.C. § 1983, alleging violations of his procedural and substantive due process rights, and violation of his right to equal protection. On August 20, 2010, Defendants moved for summary judgment. On January 26, 2011, the Magistrate Judge to which the case had been referred issued a report and recommendation, recommending summary judgment be granted to Defendants on Lewis's procedural due process and equal protection claims, and on Lewis's substantive due process claim against UTMB, but recommended summary judgment be denied on Lewis's remaining substantive due process claim against the individual defendants. Each party filed objections to the Magistrate Judge's report, and, on March 16, 2011, the district court granted summary judgment to Defendants on all of Lewis's claims. This timely appeal followed.

## STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009) (internal quotation marks omitted). Summary judgment should be

rendered if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(a).  "An issue is material if its resolution could affect the outcome of the action."  *Daniels v. Cty. of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).  "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Id.*  This Court may affirm summary judgment "on any grounds supported by the record."  *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

## ANALYSIS

Lewis appeals the district court's grant of summary judgment on his substantive due process claim.[2]  Lewis argues that he established a genuine dispute of material fact as to his property interest in his employment with UTMB and as to the basis for his termination.  Lewis further argues that UTMB is not entitled to immunity.

## I.    Eleventh Amendment

In resolving this appeal, the Court must first determine whether UTMB is entitled to immunity from suit under the Eleventh Amendment.  *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285-86 & n.9 (5th Cir. 1999) (stating that Eleventh Amendment immunity must be resolved prior to reaching merits).  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Although Lewis argues his suit may proceed because he seeks prospective relief, "[t]his jurisdictional bar applies regardless of the nature of the relief sought," *id.*  Lewis confuses the ability to seek prospective relief against

---

[2] Lewis does not appeal the district court's grant of summary judgment on his equal protection and procedural due process claims.

state officials, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), with an ability to seek prospective relief against the State and its agencies. Lewis concedes UTMB is a state agency, *see* TEX. EDUC. CODE ANN. § 61.003(5), TEX. GOV'T CODE ANN. § 572.002(10)(B), and does not argue Texas has consented to suit. Nor has Congress expressly waived sovereign immunity for § 1983 suits. *See Quern v. Jordan*, 440 U.S. 332, 340-45 (1979). Accordingly, UTMB is immune from Lewis's suit.

## II.    Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. Cty. of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993). "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Nonetheless, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998) (citing *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223-26 (1985)). The fact that "reasonable minds could disagree on the propriety of [the plaintiff]'s termination" is insufficient to defeat a public official's qualified immunity against a substantive due process claim. *Id.* Rather, the plaintiff must show that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quotation marks omitted). The plaintiff must "demonstrate that the abuse of

power by the state official shocks the conscience." *Marco*, 489 F.3d at 673 n.3 (quotation marks omitted) (finding award of advertising contract to bidder other than lowest did not "shock the conscience," and thus did not establish violation of substantive due process).

Here, putting aside Lewis's purported property interest in his employment, he nonetheless failed to identify a genuine dispute that his termination was arbitrary and capricious, or that the decision was made without professional judgment. Assuming the Neurology department's complaints were solely the result of Lewis's required enforcement of UTMB security policies and a desire on the part of Neurology department members to have Lewis terminated, the decision to terminate him had a basis in undisputed fact: Lewis's continued disrespect for his superiors and refusal to cooperate with his supervisors' request to develop a performance improvement plan. *See Walker*, 142 F.3d at 819 (finding termination was not arbitrary and capricious where plaintiff, *inter alia*, refused to cooperate with employer in resolving dispute). Indeed, it was such refusal that was the stated basis for his termination, not his interaction with Neurology. Lewis was requested, at least as early as March 31, 2008, to develop a memorandum outlining steps to improve "professional[ism] in dealing with the departmental customers," as well as other identified issues. He submitted a plan roughly a month and a half later, after numerous reminders and extensions. Even then his plan consisted of nothing more than denial that any improvement was warranted, and an assurance, written in all caps, that he would continue to behave as before. Lewis gave no credence to his supervisor's evaluation, and demonstrated no interest in utilizing the process outlined by his supervisors to explore opportunities to improve his work, even though he admitted "[g]rumbling" by staff he supported. In light of such behavior, Lewis's termination does not "shock the conscience." *See Marco*, 489 F.3d at 673 n.3.

No. 11-40456

Accordingly, Lewis fails to identify a genuine dispute to defeat summary judgment on his substantive due process claim.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.