# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10529
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2017

Lyle W. Cayce
Clerk

MICHELLE SKYY; SEAN VALDEZ,

Plaintiffs - Appellants

v.

CITY OF ARLINGTON,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-019

Before STEWART, Chief Judge, and ELROD and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Michelle Skyy ("Skyy") and Sean Valdez ("Valdez") (collectively, "Appellants") appeal the district court's memorandum opinion and order dismissing their First Amended Complaint ("Complaint") because Appellants' Complaint failed to allege sufficient facts against the City of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10529

Arlington ("City") to overcome the general prohibition against holding a municipality liable for acts of its officials as set forth in *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658 (1978). Similarly, the district court dismissed Appellants' claims for punitive damages against the City as foreclosed by *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). We AFFIRM.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On April 29, 2015, Appellants agreed to file for a divorce after which Skyy packed her belongings to leave Appellants' home. In the course of leaving, Skyy picked up money sitting on a coffee table in the Appellants' living room. Valdez, believing some of the money belonged to him, prevented Skyy from leaving the home. Appellants agreed to split the money equally. Continuing to retrieve belongings to leave the home, Skyy picked up Valdez's AR-15 rifle leading Valdez to follow her to her Hummer to take back the AR-15 rifle. In doing so, Valdez violently grabbed Skyy's arm and told her to leave. After Valdez took the gun and went inside the home, a terrified Skyy phoned the police. The emergency dispatcher directed Skyy to wait nearby Appellants' home for police to arrive. At some point after the first Arlington Police Department ("APD") police officer arrived and took Skyy to a nearby park, Valdez left Appellants' home to search for Skyy. As Valdez walked out of the side gate of Appellants' home, APD officers arrested him. While transporting Valdez to jail, APD officers requested his permission to enter the home — he denied their requests. Similarly, Skyy, while waiting at the nearby park, denied APD officers' requests to enter the home.

Without having a warrant or Appellants' permission, APD officers entered Appellants' home. While officers searched the home, Skyy was unable to enter the home to eat special dietary food. She was told that she would be placed in cuffs if she tried to leave before APD officers permitted her to go.

No. 17-10529

Roughly three hours after initially entering the home, APD officers received a warrant to retrieve the AR-15 rifle.[1] Valdez informed APD officers that Skyy had two guns, and officers sought to get those weapons out of her vehicle. After complying with the request to get those weapons, Skyy rejected APD officers' requests for her car keys, saying she would not give them authorization to go into her car. Despite that denial, APD officers entered her vehicle eventually having the Hummer towed away.

Skyy was arrested[2] and taken to the City of Arlington jail. Skyy, after informing the jail's check-in officer of her medical conditions[3] and her inability to eat all day given the events, was never provided any food. This failure occurred despite assurances on two occasions that someone would provide her with food. Skyy starved for 2 days, losing 6 pounds while in jail. Skyy was also kept in a very small holding cell for over 6 hours with no restroom or water, which caused her severe abdomen pains.

Based on these events, Appellants filed an action under 42 U.S.C. § 1983, seeking monetary and punitive damages for the City's alleged violation of their Fourth Amendment right to be free from unreasonable searches and seizures. Skyy, focusing on her time spent in the City of Arlington jail, further alleged that the City violated her Eight Amendment rights to be free from cruel and unusual punishment.

The City moved to dismiss Appellants' Complaint, arguing that the City, under *Monell*, could not be held liable for the events giving rise to Appellants'

---

[1] The warrants were left on the coffee table of the home and neither warrant was shown to Appellants prior to officers entering the home.

[2] Albeit irrelevant to the analysis in this case, the reason for Skyy's arrest is unclear from the record. Presumably, the marijuana grow tent discussed in Appellants' briefing of the affidavit issue played a role in her arrest.

[3] Skyy suffers from Celiac Sprue Disease (severe wheat gluten allergy) and Endometriosis.

alleged constitutional injuries unless the wrongful conduct of an employee was undertaken pursuant to policy or custom of the City. Similarly, the City argued that punitive damages against the City were barred under *City of Newport*. In an 8-page memorandum opinion and order, the district court granted the City's motion to dismiss, concluding that Appellants' Complaint failed to satisfy the *Monell* test for imposing municipal liability based on its failure to plead any facts establishing a custom or policy of the City that led to the constitutional tort. The district court also agreed with the City's position that punitive damages against the City were prohibited under *City of Newport*. The district court denied Appellants' motion to alter or amend judgment. Appellants timely appealed.

## II.    DISCUSSION

This court reviews the dismissal of a complaint under Rule 12(b)(6) de novo, applying the same standard as the district court. At this stage, the inquiry is primarily cabined to the complaint.[4] *See Hale v. King*, 642 F.3d 492, 498–99 (5th Cir. 2011) (per curiam). To survive a motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 417 (5th Cir. 2010) (citation and quotation marks omitted). In this case, because Appellants are pro se, we construe the complaint liberally. *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 465 (5th Cir. 2010). *Cf. Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) ("Although we

---

[4] In addition, "court[s] may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (per curiam) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

No. 17-10529

liberally construe pro se briefs, such litigants must still brief contentions in order to preserve them.").

## A. *Monell* Liability

Pointing to the City of Arlington Personnel Manual ("Manual"), Appellants essentially argue that the City should be held liable because its officers are directed to follow certain procedures and, in this case, those officers did not do so.[5]

The City can only be liable under Section 1983, however, "for acts that are directly attributable to it 'through some official action or imprimatur.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quotation marks omitted)). Beyond the mere presence of a constitutional violation by municipal employees, a plaintiff must also show "that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury."[6] *Id.* (citation omitted). Where the policy is not facially unconstitutional, a plaintiff must show that it was "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James*, 577 F.3d at 617 (citation and quotation marks omitted). Although establishing a municipal policy is usually done via "written

---

[5] Appellants did not sue the individual officers, but the Complaint includes a comment under the "Defendants" heading stating "that [the] Complaint against them is in an Official Capacity involving City of Arlington (Police Department)." To the extent that Appellants sought to sue the officers in their official capacity, those claims are construed as against the municipality. *See Brooks v. George Cty.*, 84 F.3d 157, 165 (5th Cir. 1996).

[6] Where there is no policy but the individual or entity violating the constitutional rights in a singular instance is a policymaker, the decision may constitute official policy. *See, e.g., Burge v. Par. of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (citation omitted). As we have previously held, however, it is not necessary for plaintiffs to identify a specific policymaker at the motion to dismiss stage. *See Groden v. City of Dallas*, 826 F.3d 280, 283–84 (5th Cir. 2016) ("[T]he specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.").

policy statements, ordinances, or regulations," this circuit also views municipality customs—"widespread practice that is so common and well-settled"—as municipal policy. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008) ("A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.") (citation omitted). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Piotrowski*, 237 F.3d at 581 (citation and marks omitted). "[T]here must be a direct causal link between the municipal policy and the constitutional deprivation." *Id.* at 580.

Appellants, ostensibly attempting to demonstrate a municipality custom or policy that served as the moving force behind their constitutional deprivation, rely upon various portions of the Manual. First, Appellants argue that the Manual's directive that "employee[s] shall obey and shall not engage in any conduct prohibited by the United States, Texas, or any other state or political subdivision wherein the conduct of the employee occurred" satisfies the imposition of liability upon the City for Appellants' Fourth Amendment violations as well as Skyy's Eight Amendment violations.[7] City of Arlington, Texas Personnel Manual, § 201.02.A, http://www.arlington-tx.gov/employment/wp-content/uploads/sites/21/2016/12/Personnel-Manual.pdf (hereinafter, "Manual"). In promulgating such rules, Appellants maintain, the City controls their employees. Appellants reason that because

---

[7] Appellant Skyy explicitly states as much with respect to her Eight Amendment claim, arguing that, given these Manual pronouncements, "[t]here is an affirmative link between the policy of City of Arlington Personnel Manual and the Eight Amendment."

three APD officers failed to "follow established employee policy by illegally entering their home," the City is subject to liability. In the same vein, Appellants contend that a City of Arlington detective and APD officer violated the Manual directive that "[n]o employee may knowingly enter, or cause to be entered, any inaccurate, false, or improper information, or misrepresent the facts in any City records or reports, whether such reports are oral or written" when providing their affidavits to support search warrants without including context for how they located a marijuana grow tent. *Id.* at § 201.09.A

Appellants' arguments simply misconstrue the showing necessary at this stage to overcome the general prohibition against a municipality's liability based on a theory of vicarious liability or respondeat superior. Indeed, distilled to their essence, Appellants' claims are rooted in a theory of respondeat superior—that is, the City should be held liable because its officers are directed to follow certain procedures and, in this case, those officers in the course of their employment did not do so. Such claims are prohibited. In *Young v. City of Houston*, 599 F. App'x 553, 555 (5th Cir. 2015), this circuit analyzed a "complaint alleg[ing] that [plaintiff] was injured despite policies in place to prevent injury." In other words, the plaintiff's injury stemmed from "City employees' disregard of these city policies." *Id.* The *Young* panel appropriately held that "[Young's] respondeat superior claim is not cognizable under § 1983." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

Of course, Appellants' Complaint would survive if sufficient facts are alleged to demonstrate a City custom. *See Peterson*, 588 F.3d at 847. Additionally, given that the alleged policies do not facially violate or authorize the violation of the constitutional rights Appellants assert have been violated, Appellants might also allege facts sufficient to show that the purported policies were adopted with deliberate indifference to the likelihood that APD officers would violate citizens' Fourth and Eighth Amendment rights. However, by

relying on their single incident with APD officers, and without identifying similar incidents demonstrating a persistent, widespread practice of government officials or employees, Appellants' Amended Complaint fails to allege sufficient facts to demonstrate either deliberate indifference or a City custom.  *See Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995) (holding that the plaintiff did not state a Section 1983 claim against the municipality where the alleged injury stemmed from actions of individual police officers, not city policy or custom); *see also Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309–10 (5th Cir. 2004) (holding that the plaintiff did not plead sufficient facts to demonstrate deliberate indifference when failing to plead "that there had ever been any similar incidents (or allege any other facts suggesting that the alleged policy was adopted or maintained with deliberate indifference to constitutional rights)").

### B. Punitive Damages

Appellants seek five million dollars in punitive damages.  Concluding that punitive damages for actions of its officials were not accorded against a municipality at common law in 1871 when Congress enacted the first iteration of Section 1983, the Supreme Court, in *City of Newport*, held that a municipality was immune from the imposition of punitive damages unless Congress specifically provides to the contrary.  453 U.S. at 259–71.  When this circuit has had occasion to address the issue of punitive damages against a municipality we have faithfully applied *City of Newport*, rejecting attempts to impose punitive damages for constitutional and other violations where Congress has not expressed a clear intention to do so. *See Gil Ramirez Grp. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412–13 (5th Cir. 2015); *Stern v. Hinds Cty.*, 436 F. App'x 381, 382 (5th Cir. 2011). Because Congress has not expressed a clear intention to permit punitive damages against municipalities in Section

No. 17-10529

1983 actions stemming from alleged Fourth and Eighth Amendment violations, Appellants' are barred from seeking punitive damages.

## III.    CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.