# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 3, 2024

Lyle W. Cayce
Clerk

_____

No. 23-30893

_____

Charles Johnson; Mallory Johnson,

*Plaintiffs—Appellants*,

*versus*

City of Monroe; Oliver Ellis, *also known as* Friday Ellis;
Michael Fendall; Victor Zordan,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CV-828

_____

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Officer Charles Johnson was terminated from his job with the Monroe Police Department for allegedly mishandling an excessive force complaint in an attempt to influence a mayoral election. He subsequently filed a suit under 42 U.S.C § 1983 against the City of Monroe ("City"), Mayor Oliver "Friday" Ellis, Sergeant Michael Fendall, and Police Chief Victor Zordan

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30893

(collectively, "Defendants"). Johnson alleges Defendants violated his procedural and substantive due process rights. Johnson's wife also brought a loss of consortium claim. The district court granted summary judgment to Defendants. For the reasons set forth below, we AFFIRM.

## I.    Background

Johnson was a public information officer for the Monroe Police Department ("MPD").[1] On July 6, 2020, Johnson participated in a phone conference that included then-Police Chief Reginald "Reggie" Brown, Monroe City Attorney Angie Sturdivant, and Assistant City Attorney Brandon Creekbaum. In this meeting, Johnson learned that a man named Timothy Williams made an excessive force complaint against Monroe police officers. Defendants argue that Johnson was instructed to refer the complaint to the Louisiana State Police ("LSP") because it was a criminal matter. Johnson, however, contends that he "was not ordered to take any action."

On July 13, 2020, Johnson contacted LSP Criminal Investigator Edmond Henry "Hank" Smith about the excessive force claim. Johnson allegedly said the City Attorney's Office had requested that he contact LSP the prior week, but he waited until the next Monday because he "didn't want to ruin anybody's weekend." That weekend was the mayoral election. The City contends that it had cause to believe Johnson "intentionally delayed the reporting of the complaint to the LSP in an effort to influence the election results."

On September 4, 2020, MPD sent a letter to Johnson notifying him of an investigation into his possible misconduct regarding Williams's

---

[1] Neither party provided adequate record citations for the facts surrounding this case. In an attempt to capture the entire background, this section relies both on the record and the parties' arguments, noting factual discrepancies where relevant.

complaint. The letter directed Johnson to attend an investigative interview, to which he was permitted to bring an attorney. On October 8, 2020, Johnson attended the interview with his attorney. Johnson was advised of his rights under the Police Officers' Bill of Rights. In the interview, Johnson confirmed when he learned of Williams's complaint but denied being instructed to report the complaint to LSP. Defendants claim that, because Johnson's answers were inconsistent and evasive, he was ordered to appear for a polygraph examination.

Johnson appeared for his polygraph on October 12, 2020. He did not have an attorney present for the examination. Johnson signed a Police Officers' Bill of Rights prior to the exam. Cecil Carter, the president of a private investigation firm, conducted the polygraph. During the exam, Johnson admitted that he had been ordered to call LSP on Monday the 13th, despite previously stating that he called on his own initiative. Johnson also answered "No" to each the following questions:

> (1) Did you discuss with anyone about delaying sending the William's [sic] case to LSP because of the 07/11/2020, City of Monroe Mayoral Election?

> (2) Did anyone tell you to delay sending the William's [sic] case to the LSP because of the 07/11/2020, City of Monroe Mayoral Election?

> (3) Did you delay sending the William's [sic] case to the LSP because you didn't want to send the William's [sic] case to the LSP before the 07/11/2020, City of Monroe Mayoral Election?

However, based on "the facts furnished to [Carter] on [Johnson's] pretest interview and evaluation of [Johnson's] physiological response noted on his polygraph charts," Carter concluded that Johnson's responses to these questions were deceptive.

No. 23-30893

The City subsequently issued a letter to Johnson, requiring him to appear at a pre-disciplinary hearing. The letter detailed the timeline of the investigation and cited that Johnson had provided inconsistent answers regarding whether he was ordered to report Williams's complaint to LSP and whether he told Smith that he intentionally delayed the report. The letter also noted which MPD rules Johnson's alleged actions violated.

In November 2020,[2] Johnson appeared at the hearing with his attorney. During that hearing, Johnson confirmed that he had been given the video and audio from his polygraph, the interrogation transcript, and polygraph analysis. He was also again informed of his rights under the Police Officers' Bill of Rights. Defendants contend that this hearing gave Johnson the opportunity to explain to MPD why it should not take disciplinary action and that Johnson did not provide information to warrant withholding such action.

Johnson was subsequently terminated on November 23, 2020. Police Chief Zordan made the decision to terminate him. The determination letter provided that Johnson's evasive answers and failed polygraph exam showed that he was untruthful during the investigation and pre-disciplinary hearing. It further explained that "[b]eing untruthful during an interrogation and failing a polygraph examination impair the efficient and effective operation of the [MPD]." Finally, the letter cited that Johnson's termination also stemmed from his participation in delaying the reporting of Williams's complaint until after the mayoral election.

In accordance with an appeal process available to Louisiana civil service employees, Johnson appealed his termination to the Monroe

---

[2] There is a discrepancy in the record regarding whether the hearing was on November 4th or 5th.

Municipal Fire and Police Civil Service Board ("Board"). The Board conducted hearings over several months. Johnson had an attorney present for the hearings and was able to present evidence for his case. At the hearing, the City argued that Johnson changed his story during the investigation. Defendants now summarize his alleged statements as follows:

> First, on Oct. 8, 2020, Officer Johnson said that he was not ordered to call Bob Brown with the LSP. Then on Oct. 9, 2020, Officer Johnson stated that he was maybe ordered to call Bob Brown. Then, at his polygraph exam on Oct. 12, 2020, Johnson said he actually <u>was</u> ordered to call Bob Brown but not until after the mayoral election.

Johnson affirmed that he made these statements and admitted that his story changed through the investigation. Finally, the City presented testimony from Carter regarding the polygraph exam and an independent evaluation of the polygraph examination by Nathan Gordon, which affirmed the results. The Board affirmed Johnson's termination.

On November 23, 2021, Johnson and his wife, Mallory Johnson, initiated this suit in state court pursuant to 42 U.S.C. § 1983.[3] The complaint alleges violations of Johnson's procedural and substantive due process rights under the Fifth and Fourteenth Amendments. Mrs. Johnson asserted a loss of consortium claim.

Defendants removed the case to the Western District of Louisiana. Defendants subsequently moved for summary judgment, arguing (1) the City was not liable under § 1983, (2) the claims against the individual defendants in their official capacity were duplicative, (3) the individual defendants, in

---

[3] In addition to the previously named parties, Johnson sued the Louisiana State Police, Carter, Smith, former Police Chief Eugene Ellis, and "XYZ Insurance Companies." However, they are not parties to this appeal.

their personal capacities, were entitled to qualified immunity, (4) Johnson failed to show a constitutional violation, and (5) Mrs. Johnson's loss of consortium claim failed as a matter of law. The district court agreed with Defendants' arguments and dismissed the Johnsons' claims with prejudice.[4] The Johnsons timely appealed.

## II.    Jurisdiction & Standard of Review

The district court properly exercised jurisdiction over Johnson's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Mrs. Johnson's state law claim pursuant to 28 U.S.C. § 1367. We have jurisdiction to review the district court's final judgment. 28 U.S.C. § 1291.

We review de novo a district court's grant of summary judgment. *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 444 (5th Cir. 2018). In conducting this review, we "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    Discussion

On appeal, Johnson raises four issues: (1) whether the district court erred in granting summary judgment to the City on Johnson's municipal liability claim; (2) whether the district court erred in granting qualified immunity to Zordan[5] on Johnson's procedural due process claim;

---

[4] The district court also dismissed Johnson's Fifth Amendment claims because none of the parties are federal actors. Johnson has not challenged this ruling.

[5] Johnson has not challenged the district court's conclusion that he had not asserted claims against Ellis or Fendall in their individual capacities.

(3) whether the district court erred in granting summary judgment to Defendants on Johnson's substantive due process claim; and (4) whether the district court erred in dismissing Mrs. Johnson's loss of consortium claim. We address each issue in turn.

## A. Municipal Liability

Plaintiffs may bring § 1983 claims against municipalities for violations of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, "[i]t is well established that a city is not liable under § 1983 on the theory of respondeat superior." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Instead, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Accordingly, to establish municipal liability, a plaintiff must identify "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (quoting *Monell*, 436 U.S. at 694).

Here, Johnson has not identified an official custom or policy that caused the alleged constitutional violations. He instead argues that the alleged violations were caused by individuals' *failure* to follow City policy. But we have previously rejected such arguments, reasoning that they "are rooted in a theory of respondeat superior." *Skyy v. City of Arlington*, 712 F. App'x 396, 400 (5th Cir. 2017) (per curiam); *see also Young v. City of Houston*, 599 F. App'x 553, 555 (5th Cir. 2015) (affirming dismissal because the "complaint d[id] not allege that the [c]ity had a policy or custom" but rather "allege[d] that [plaintiff] was injured *despite* policies in place to prevent

injury").[6]    By pointing only to singular actions of non-policymaking individuals, Johnson has failed to show the alleged violations were "attributable to the municipality through some sort of official action." *See Piotrowski*, 237 F.3d at 578.    Accordingly, we affirm the district court's dismissal of his municipal liability claim.

## B. Qualified Immunity

Under § 1983, private citizens may sue state public officials for violations of their constitutional rights.    However, "[q]ualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'"    *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).    To determine whether qualified immunity bars a § 1983 claim, we ask (1) whether "the official's conduct violated a constitutional right," and (2) "whether the right was clearly established."    *Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020) (internal quotation marks and citation omitted).    "The plaintiff has the burden of demonstrating that the defendant official is not entitled to qualified immunity."    *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).    In reviewing whether qualified immunity is proper, we may limit our analysis to the "clearly established" prong. *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).    Here, however, we discuss the constitutional prong because Johnson clearly has not shown that Zordan violated his procedural due process rights.

"We analyze procedural due process questions using a two-step inquiry."    *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).    "First, we

---

[6] Although these cases are not "controlling precedent," they "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

determine whether the state has deprived a person of a liberty or property interest." *Id.* If it has, "we must determine whether the procedures relative to that deprivation were constitutionally sufficient." *Id.* Defendants concede that Johnson had a property interest in his employment by virtue of his tenured civil service. *See Page v. DeLaune*, 837 F.2d 233, 238 (5th Cir. 1988) ("State law can create a property interest in continued employment."); La. Rev. Stat. Ann. § 33:2500. The remaining issue is thus whether Zordan provided Johnson constitutionally sufficient procedures.

"Due process requires only that [an] employee receive 'notice and an opportunity to respond.'" *Page*, 837 F.2d at 239 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). A "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (quoting *Loudermill*, 470 U.S. at 546). However, "if a governmental employer provides a full *post*-termination hearing, *pre*termination due process is limited." *Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993).

Johnson argues that he did not receive adequate notice of the charges against him or explanation of the evidence. Specifically, he claims that the initial letter of investigation was vague, and he did not receive evidence collected before the investigation. But even assuming arguendo the initial notice of investigation was constitutionally insufficient, Johnson subsequently received numerous notices of the ongoing investigation and had several opportunities to be heard before his termination. *See id.* (describing procedures required "before dismissing an employee"). After his interview and polygraph examination, Johnson received a detailed pre-hearing letter that explained the rules he violated and evidence against him. Further, he was able to attend a pre-termination hearing with counsel, where he had the

opportunity to present his side of the story. This hearing was sufficient "to ensure that the charges raised against [him] are true and support his . . . dismissal." *See id.* Additionally, these pre-termination procedures pass constitutional muster given the months-long evidentiary hearing conducted by the Board after Johnson's termination.[7] *See id.* at 844–45 (holding that a thirty-minute pre-termination meeting satisfied due process because the employee had a full post-termination hearing available).

Accordingly, Johnson has failed to raise a genuine dispute of material fact regarding whether Zordan violated his procedural due process rights. We therefore affirm the district court's grant of qualified immunity to Zordan.[8]

_____

[7] Johnson also argues that the investigation took longer than sixty days, in violation of the Police Officers' Bill of Rights. Johnson relies on testimony from Fendall suggesting that he learned of Johnson's remarks to Smith on July 13, 2020. Thus, according to Johnson, the investigation spanned ninety-three days between July 13, 2020, and October 13, 2020 (when the pre-disciplinary hearing letter was issued). However, Fendall also testified that he reported Johnson's statement on September 3, 2020, and that he was not investigating Johnson's alleged misconduct before that date. According to Defendants, the investigation spanned only forty days. But even assuming arguendo the investigation did extend past the deadline, Johnson has not shown how such delay deprived him of notice and an opportunity to be heard. Nor does he cite caselaw for the notion that a policy violation necessarily constitutes a procedural due process violation. Additionally, even if the delay did constitute a due process violation, Johnson has not shown that his rights were clearly established here.

[8] Even if Johnson had shown a constitutional violation, his claim would still fail because he has not argued that his rights were clearly established. He briefly recites the requirement of this prong in his brief. However, he does not otherwise elaborate on the requirement, and he fails to cite cases that "squarely govern[] the specific facts at issue" here. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (internal quotation marks and citation omitted). Further, he has not argued that this is one of the rare cases in which the constitutional violation is so obvious that analogous case law is not needed. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam).

## C. Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (per curiam) (quotation omitted). "The fact that reasonable minds could disagree on the propriety of the plaintiff's termination is insufficient." *Id.* at 631 (alterations adopted) (internal quotation marks and citation omitted). A plaintiff must show that the defendant's decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quotation omitted). Indeed, the decision must be so egregious that it "shocks the conscience." *Id.* (quotation omitted).

As discussed above, Johnson has a property interest in his continued employment with MPD. The remaining issue is thus whether his termination was arbitrary or capricious. Johnson argues that his termination was arbitrary and capricious because it was motivated by political expediency. He points to an interaction with Carter during the polygraph examination, in which Carter acknowledged the importance of the investigation and political fallout that could potentially occur. But a discussion of politics is nearly inescapable here because the case involves allegations of misconduct to influence a political election. Further, Carter is not an employee of the City, and Johnson provides no evidence that anyone within MPD was motivated by politics. Indeed, Zordan testified at the Board hearing that he terminated Johnson because Johnson delayed the excessive force report and was untruthful during the investigation. Zordan spoke at length about the truthfulness of the police force, noting that "[i]t's one of the cornerstones of what [he] think[s] is most important for a police officer." Johnson has thus failed to raise a

genuine dispute of material fact regarding whether Defendants were motivated by politics.

Johnson also argues that his termination was arbitrary and capricious because it was based on insufficient evidence. He contends that no one testified that he delayed the investigation to influence the election, and Smith admitted Johnson's statement about not wanting to "ruin anybody's weekend" could have referred to civil unrest. But this evidence does not make the termination decision arbitrary or capricious in the face of the other evidence available at the time. By his own admission, Johnson's story changed several times during the course of the investigation. Additionally, Johnson's polygraph showed deception specifically on the question of whether he delayed the report for the election.[9]

But even if Johnson delayed the report for nonpolitical reasons, he was still untruthful during the investigation. In light of the evidence of Johnson's dishonesty, the decision to terminate him was not made "without a rational connection" to the facts. *See id.* (quotation omitted). Nor was it so egregious that it shocks the conscience. *See id.* Indeed, the decision to terminate Johnson based on his dishonesty is rationally related to the City's interest in maintaining the integrity of the police force. The Board's extensive hearing and affirmation of the termination further supports the conclusion that Johnson's termination was not arbitrary or capricious.

---

[9] Citing a report from his own polygraph expert, Johnson argues this polygraph examination was unreliable because of poor question construction. But a second polygraph expert reviewed the examination and affirmed its validity against the standards of the profession. The fact that "reasonable minds could disagree" on the accuracy of the examination does not mean that Defendants were irrational to rely, in part, on the results. *See Lewis*, 665 F.3d at 631 (quotation omitted).

In sum, Johnson has failed to raise a genuine dispute of material fact regarding his substantive due process claim. We therefore affirm the district court's dismissal of his claim.

### D. Loss of Consortium

Finally, the Johnsons argue the district court erred in dismissing Mrs. Johnson's loss of consortium claim. Under Louisiana law, loss of consortium claims are derivative claims arising out of a primary tort against another person. *Landry v. Avondale Indus.*, 864 So. 2d 117, 126 (La. 2003); *Ferrell v. Fireman's Fund Ins.*, 696 So. 2d 569, 576 (La. 1997). Here, Johnson has not alleged a state law tort claim. The Johnsons argue that, because this suit was initially filed in state court, the loss of consortium claim is viable. But filing a complaint in state court does not constitute an allegation of a state tort claim. Also, regardless of whether a derivative claim is available under § 1983, the Johnsons have not cited caselaw that would allow Mrs. Johnson's loss of consortium claim to prevail despite Johnson's claims being unsuccessful. We thus need not address this issue further, and we affirm the district court's dismissal of Mrs. Johnson's loss of consortium claim.

### IV.    Conclusion

For the reasons set forth above, we AFFIRM the judgment of the district court.