# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30882

————————

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2024

Lyle W. Cayce
Clerk

REGINALD BROWN; LATOYA BROWN,

*Plaintiffs—Appellants*,

*versus*

CITY OF MONROE; VICTOR ZORDAN,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CV-787

———————————————————————

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Reginald and Latoya Brown sued the City of Monroe and Police Chief Victor Zordan for due process violations related to Reginald Brown's termination from the Monroe Police Department. The district court granted summary judgment to the City and Chief Zordan on all claims. We AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-30882

I

Reginald Brown served as a corporal and Interim Chief of Police in the Monroe Police Department (MPD). On July 6, 2020, five days before a contested mayoral election, several officers informed Brown of an incident of excessive force. Brown notified the City Attorney, placed the offending officers on leave, and informed the mayor that he would immediately open criminal and administrative investigations. The next day, Brown reviewed the body camera footage of the incident. On July 9, the City Attorney called and asked Brown to refer the investigation to the Louisiana State Police. Brown refused, claiming he had already initiated a criminal investigation within the MPD.

That weekend, the mayoral incumbent who had appointed Brown as Interim Chief of Police lost the election. The following Monday, July 13, 2020, Brown reversed course and referred the matter to Louisiana State Police to open a criminal investigation into the excessive force complaint.

On September 7, 2020, Brown received a letter from the new Chief of Police, Eugene Ellis, informing him of an ongoing investigation into his potential misconduct regarding the excessive force case. Brown was ordered to participate in an interview, and he retained counsel. Approximately one month later, Brown testified over Zoom and was informed of his obligation to tell the truth. During the interview, Brown denied delaying the investigation into the excessive force case because of the upcoming mayoral election. Brown later received instruction to sit for a polygraph on October 12, 2020, and was advised that "if he didn't submit, he would be terminated." There, the examiner asked Brown the same questions from the previous interview. Brown again stated he did not delay the investigation due to the upcoming mayoral election.

The polygraph examiner determined that Brown's answers were deceptive—Brown had lied. Another polygraph examiner reviewed the results and reached the same conclusion. Two days after the polygraph, Chief Ellis sent Brown a pre-disciplinary hearing letter stating that:

1. Brown's "inconsistent investigative decisions immediately preceding and following the July 11, 2020, City mayoral election seemed very suspect,"

2. The polygraph results indicated Brown answered interview questions "deceptively,"

3. That "[b]eing untruthful during an interrogation and failing a polygraph examination impair the efficient and effective operation of MPD," and

4. Brown's results indicated that he "purposely delayed" contacting the Louisiana State Police because of the mayoral election.

Brown attended a pre-disciplinary hearing before the newly appointed Chief, Victor Zordan, on November 5, 2020, accompanied by counsel. On November 23, he received a letter from Chief Zordan discharging him from the MPD.

Brown appealed his termination to the Monroe Municipal Fire and Police Civil Service Board on December 3, 2020, and alleged that the MPD did not act in good faith. On March 17, 2022, the Board found that the MPD acted in good faith, but that Brown's punishment was "not commensurate with the offense." The Board modified Brown's termination to suspension for 90 days without pay.

In the meantime, Brown and his wife Latoya sued the City of Monroe, Police Chief Victor Zordan, the Louisiana State Police, Mayor Friday Ellis,

No. 23-30882

former Police Chief Eugene Ellis, Sergeant Mike Fendall, Hank Smith, and "Their XYZ Insurance Companies" in Louisiana state court. Brown alleged the City, Mayor Ellis, former Chief Ellis, Chief Zordan, and Mike Fendall violated his due process rights under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 by failing to provide him with "a detailed description of the erroneous . . . charges against him," failing to provide him with the identities of the individuals involved, and barring his attorney from the room during the polygraph examination. He also sued Hank Smith for defamation and slander. Latoya Brown—his wife—sued for loss of consortium.

Defendants removed to district court. In October 2023, the City of Monroe and Chief Zordan—the only remaining Defendants—filed a motion for summary judgment. The district court granted their motion and dismissed the claims against the City and Zordan with prejudice. The Browns now appeal.

## II

We review summary judgment de novo, applying the same standard as the district court. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Louisiana law applies in this diversity case. *Liberty Mutual Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528 (5th Cir. 2023).

## III

On appeal, the Browns argue that (1) there was a genuine dispute of material fact as to whether Brown identified an official policy; (2) the district court erred in finding that Chief Zordan was entitled to qualified immunity against the procedural due process claims; (3) the district court erred in finding that Brown could not establish his termination was arbitrary and

No. 23-30882

capricious; and (4) the district court erred in finding Latoya Brown's loss of consortium claim was improper. We review each in turn.

A

First, Brown contends that the district court erred in finding no genuine dispute of material fact existed as to whether Brown identified an official policy.

As an initial matter, Brown does not contest the district court's determination that his claims against Zordan in his official capacity as Police Chief be treated as claims against the City of Monroe. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . [T]he real party in interest is the entity.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citation omitted)). Therefore, we treat Brown's procedural due process claims against Chief Zordan as claims against the City.

For his claims against the City of Monroe to survive summary judgment, Brown must show a genuine dispute of material fact as to "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Brown may show the existence of an official policy by pointing to "a policy statement formally announced by an official policymaker" or showing a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls, Tex.*,

614 F.3d 161, 168–69 (5th Cir. 2010) (citing and quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Brown does not identify an official or unofficial policy in his complaint. He claims that the City's actions violated his due process rights by "act[ing] against him in bad faith, arbitrarily, capriciously, prejudicial[ly,] all for political expediency." Yet, missing from the complaint is a single reference to any formal policy or any persistent widespread practice.[1]

Admittedly, in his response to the motion for summary judgment, Brown mentions "policy." Specifically, he claims that "Zordan testified at the civil service hearing on October 20, [] 2020, that officer Brown was bound by policy and procedure regarding his ordering of the polygraph test," and that "Chief Zordan['s] entire testimony centered around the City policy or custom regarding polygraphs and untruthfulness." Yet, Brown does not connect this policy to the alleged due process violations. Indeed, Brown identifies a policy (referenced as "policy 52.2 point") that permits termination of an employee for failing to participate in a polygraph or "if the results show deception and further evidence supports the findings." But Brown fails to show how the City or Zordan violated a policy that *permits*

---

[1] In his brief before us, Brown writes "[t]he city violated their policy 52.2 point which talks about submission to tests and procedures dealing with the polygraph test[;] section C of that policy stated disciplinary action including dismissal may be taken against a member if he or she refuses to take a PPSE/VSE examination or if the results show deception and further evidence supports the findings." Interpreted generously, this statement seems to identify a policy. However, Brown did not press this argument before the district court. We therefore consider it forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court . . . ."); *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("[I]n order to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, a litigant also must press and not merely intimate the argument during proceedings before the district court." (quotation marks and citation omitted)).

termination on the grounds of polygraph failure, nor does he connect the policy to any other alleged violations of his constitutional rights. Such a failure is insufficient pleading, not a dispute of fact.

For this reason, Brown's municipal liability claim against the City for violations of his due process rights fails.

B

The next question is whether Chief Zordan, in his individual capacity, is entitled to qualified immunity against Brown's claim of procedural and substantive due process violations.

To determine whether qualified immunity applies, we engage in a two-part inquiry: (1) whether the official's conduct violated the plaintiff's statutory or constitutional rights; and (2) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).

It is undisputed that Chief Zordan sent Brown the letter terminating him from the MPD. Although the complaint and briefing before us are jumbled and imprecise, it appears, at best, that Brown contests both the basis for Zordan's decision—a substantive due process issue—and the level of notice he was given during the investigation—a procedural due process issue. We address these arguments in turn.

1

Brown fails to show that Zordan violated his constitutional right to substantive due process.

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v.*

*Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (per curiam) (quotation omitted). To be considered "arbitrary and capricious," a decision must be "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 631 (internal quotation omitted).

Even if Brown had a property interest in his continued employment with the MPD, he fails as to the second element.[2] Brown argues that "Zord[a]n made an assumption based on an erroneous polygraph test and phantom information he never revealed," and "politically and wrongfully discharged appellant Brown." He further claims the district court "made a credibility determination by ruling that the nature of what Brown was allegedly dishonest about, was postponing the investigation of police brutality for selfish gain."

Neither of these statements establish that Zordan violated Brown's constitutional right to substantive due process. Brown failed the proffered polygraph test—this is not disputed.[3] And Brown failed that polygraph test when answering questions that he had previously answered the same way in an earlier interview, indicating he spoke dishonestly during that proceeding as well. Zordan also stated that the basis for Brown's termination was his apparent untruthfulness in the examination and prior interrogation.[4] Brown

---

[2] Although it is not necessary to discuss it here, it appears that Brown has a property interest in his continued employment with the MPD. *See Johnson v. City of Monroe*, No. 23-30893, 2024 WL 4024351, at **1, 4 (5th Cir. Sept. 3, 2024) (per curiam) (concerning the same series of events at-issue in this case—the "mishandling [of] an excessive force complaint in an attempt to influence a mayoral election.").

[3] Brown disputes the accuracy of polygraphs generally, but he does not deny that the provided test indicated he "failed" the exam.

[4] During his cross-examination before the Board, Zordan repeatedly asserted that he made "his own determination" about the reason Brown delayed the excessive force

argues that the polygraph was invalid and that Zordan did not identify a specific person who initially accused Brown of improperly handling the investigation.[5] But he provides little to no evidence indicating that the decision Zordan reached was untethered to the facts before Zordan at the time—the negative polygraph results. Zordan's decision to terminate Brown exhibits a rational connection to the facts and is not indicative of arbitrary and capricious decision-making. *See Lewis*, 665 F.3d at 631.

2

Brown also fails to show Zordan violated his constitutional right to procedural due process.

"Due process requires only that [an] employee receive 'notice and an opportunity to respond.'" *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). A "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (quoting *Loudermill*, 470 U.S. at 546). "However, 'if a governmental employer provides a full *post*-termination hearing, *pre*termination due process is limited.'" *Johnson v. City of Monroe*, No. 23-30893, 2024 WL 4024351, at *4 (5th Cir. Sept. 3, 2024) (per curiam) (internal citation omitted) (emphasis in original).

---

investigation based on the "lengthy" materials and evidence presented to him. Zordan testified that these "materials" included the polygraph tests and the investigative report.

[5] Brown states that "relying on a polygraph examination that the [S]tate of Louisiana does not recognize in and of itself is arbitrary and egregious conduct." However, Brown does not cite a policy or law stating how Louisiana approaches polygraph exams or how Louisiana "does not recognize" such exams. Instead, he cites to his expert's opinion that polygraph results are unreliable.

Brown claims that Zordan did not "inform[] him of the nature of the charges against him which violated the police officers Bill of Rights." He also asserts that the City "failed to provide [him] a copy of his file after he repeatedly requested it per MPD policy," and claims that "no specific charges were provided to [him] until he received a pre disciplinary letter dated October 14, 2020."

The record tells another story. Brown received a letter on September 7, 2020, that stated he was being investigated for "possible misconduct committed by [him] regarding [his] knowledge and handling of [the] complaint of excessive force." The letter also stated that the investigation would "cover all aspects of [his] knowledge and handling of or involvement in [the] excessive force complaint." Brown evidently knew enough about the charges to retain counsel for his investigative review on October 8. During the interview, the interviewer explicitly asked Brown whether he delayed sending the excessive force case to the LSP because of the mayoral election. Brown answered these same questions again at the October 12 polygraph examination. After this series of interviews, Brown received a lengthy letter on October 14 that he acknowledges provided "specific charges" as well as a description of the evidence against him. Only on November 23, after a multi-day pre-disciplinary hearing with counsel present, did Zordan decide to terminate Brown.

Brown received notice about the allegations, charges, and evidence against him, and he was able to attend a pre-termination hearing with counsel. By itself, the above timeline indicates neither the City nor Zordan violated Brown's procedural due process rights. But, since Brown *also* received a lengthy post-termination review by the Board, these pre-termination procedures are more than sufficient to satisfy due process. *See Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993) ("In such circumstances, before dismissing an employee, the employer need only

provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of the evidence of those charges, and afford the employee an opportunity to respond.") (citing *Loudermill*, 470 U.S. at 546); *see also Johnson*, 2024 WL 4024351, at *4.

Brown failed to show Zordan violated his constitutional rights to substantive and procedural due process; he has not shown "evidence supporting the violation of a constitutional right exists." *Hampton Co. Nat. Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224-25 (5th Cir. 2008). Therefore, our analysis into whether Zordan is entitled to qualified immunity stops here.

## C

The third question is whether the district court erred in finding that Brown could not establish his termination was arbitrary and capricious. For the reasons stated above, we believe that there is no genuine dispute of fact as to the validity of Brown's termination.

## D

Finally, we assess whether the district court erred in finding Latoya Brown's loss of consortium claim was improper.

In the complaint, Latoya Brown asserted "that false accusations by the Defendants levied against her husband ha[d] caused she and her family emotional distress, anxiety, embarrassment, loss of consortium, among other things." Yet, a loss of consortium claim cannot be brought under § 1983; it is a "derivative claim[] arising out of a primary tort against another person." *Johnson*, 2024 WL 4024351, at *6 (citing *Landry v. Avondale Indus.*, 864 So. 2d 117, 126 (La. 2003)); *see also Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) ("A third party may not assert a civil rights claim based on the civil rights violations of another individual." (internal citation omitted)). Latoya Brown has not alleged a state law tort claim. She also fails to cite

11

caselaw showing her loss of consortium claim survives our determination that neither the City nor Zordan are liable for Reginald Brown's harms. *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 767 (W.D. La. 2000) ("Given this Court's finding of no liability on behalf of Defendants, no claim for loss of consortium can survive."), *aff'd*, 243 F.3d 200 (5th Cir. 2001). Therefore, Latoya Brown's claim is not viable.

## IV

For the reasons stated above, we AFFIRM summary judgment in favor of Chief Zordan and the City of Monroe.